```
IN THE UNITED STATES DISTRICT COURT
   FOR THE DISTRICT OF SOUTH CAROLINA
              FLORENCE DIVISION
```

| | | |
|---|---|---|
| Reginald Jackson, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 4:01-2129-HMH-TER |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Michael J. Astrue, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Thomas E. Rogers, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[1] Mary Alice McCall ("McCall"), on behalf of her grandson, Reginald Jackson ("Jackson"), seeks judicial review of the Commissioner of Social Security's ("Commissioner") denial of Jackson's application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. In his Report, Magistrate Judge Rogers recommends reversing the Commissioner's denial of benefits. (Report and Recommendation 22.) Both Jackson and the Commissioner filed objections to the Report and Recommendation. For the reasons stated below, the court reverses the Commissioner's decision and remands the case for an award of SSI benefits for January and February 2001.

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1).

1

## I. Factual and Procedural Background

The facts are fully set forth in the decision of the administrative law judge ("ALJ"), (R. at 260-65.), and summarized as follows. At the time of the hearing before the ALJ on June 24, 2002, Jackson was a fourteen-year-old child. (Id. at 261.) Jackson has no past work experience. (Id.) McCall alleges that Jackson is disabled due to nervousness, headaches, leg pain, weakness, emotional abuse, chest pains, and insomnia. (Id.)

McCall filed an application for SSI benefits on behalf of Jackson on March 17, 1999. (Id. at 260.) The application was denied initially and on reconsideration. On November 28, 2000, after a hearing held on September 15, 2000, the ALJ found that Jackson was not disabled. (R. at 260.) The Appeals Council denied Jackson's request for review on April 20, 2001. (Id.) On May 1, 2001, Jackson filed a complaint in this court seeking judicial review of the final decision of the Commissioner. On September 20, 2001, this court issued an order granting the Commissioner's motion to remand the case pursuant to sentence six of 42 U.S.C. § 405(g) for further administrative proceedings.

On June 24, 2002, the ALJ held a supplemental hearing; however, at the time of the hearing Jackson was adjudged as disabled pursuant to a subsequently filed application of March 21, 2001. (Id. at 261.) Accordingly, the only issue before the ALJ at the supplemental hearing was whether Jackson was disabled during the time period beginning March 17, 1999, the date of the first application, through February 2001, the month before the filing of the subsequent application ("relevant time period"). (Id.) On September 25, 2002, the ALJ concluded that Jackson was not disabled during the relevant time period and denied Jackson SSI benefits. The Appeals Council denied Jackson's request for review on March 27, 2007, thus making the

September 25, 2002 decision the final decision of the Commissioner after remand. (Id. at 254-55.) The Commissioner filed a motion to reopen the case on May 29, 2007. On October 3, 2007, this court issued an order granting the Commissioner's motion to reopen the case. The Report and Recommendation was entered on January 8, 2010. The Commissioner filed objections on January 21, 2010, and Jackson filed objections on January 25, 2010.

## II. THE MAGISTRATE JUDGE'S REPORT

Jackson raised one issue in his brief: "The ALJ's finding that Reggie was not markedly impaired in his ability to interact and relate with others is not supported by substantial evidence." (Pl. Br. 1.) The magistrate judge concluded that the ALJ's decision was supported by substantial evidence "up through the date of January 2001." (Report and Recommendation 22.) Therefore, the magistrate judge recommends that the Commissioner's decision be reversed to the extent that Jackson should be found disabled as of January 3, 2001. (Id.)

## III. DISCUSSION OF THE LAW

### A. Standard of Review

Under 42 U.S.C. § 405(g), the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). In other words, the court "must uphold the factual findings of the Secretary [only] if they are supported by substantial evidence *and* were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (emphasis added).

"Substantial evidence" is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.

1990) (internal quotation marks omitted). Hence, if the Commissioner's finding is supported by substantial evidence, the court should uphold the finding even if the court disagrees with it. See id. However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

### B. Objections

Both the Commissioner and Jackson filed objections to the Report and Recommendation. Objections to the Report must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Report of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

The Commissioner and Jackson object to the magistrate judge's Report and Recommendation alleging that the magistrate judge erroneously "engaged in fact finding as to when [Jackson's] disability commenced." (Commissioner Objections 2.); (Jackson Objections 2.) A child will be considered "disabled" if he is

> under the age of 18 [and] . . . has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i). "[A] marked limitation in a domain [occurs] when [a claimaint's] impairment(s) interferes seriously with [their] ability to independently initiate, sustain, or

4

complete activities." 20 C.F.R. § 416.926a(e)(2)(i). The Social Security Administration ("SSA") determines childhood disability by using the "whole child" approach outlined in the Social Security Ruling ("SSR") 09-1p. The "whole child" approach determines whether a child suffers from severe functional limitations. Children are evaluated in six domains in order to "capture all of what a child can or cannot do." SSR 09-19, 2009 WL 396031, at *1 (2009). The six domains include "(1) [a]cquiring and using information, (2) [a]ttending and completing tasks, (3) [i]nteracting and relating with others, (4) [m]oving about and manipulating objects, (5) [c]aring for yourself, and (6) [h]ealth and physical well-being." Id. Disability is established if a child has marked limitations in at least two of the six domains or an extreme limitation in one domain. 20 C.F.R. § 416.926a(d). The ALJ concluded that Jackson only exhibited a marked limitation in his ability to acquire and use information. (R. at 264.) Accordingly, the ALJ found no marked limitations in the five remaining domains.

The record reveals that during the relevant time period, Jackson complained of "headaches, chest pain, leg pain and giving away, dizziness, and crawling sensations on his skin." (Id. at 262.) Medical examinations, including "chest x-ray, hip x-ray, leg x-ray, abdominal x-ray . . . head CT, and laboratory studies [were] negative for any medically determinable impairment to account for his symptoms through February 2001." (Id.) Accordingly, Jackson's complaints were "attributed to anxiety for which he received counseling and medication." (Id.)

Jackson began visiting Dr. Joe Neely ("Dr. Neely"), a clinical psychologist, in January 1999. (Id. at 205.) Dr. Neely opined that Jackson "carries a generalized anxiety disorder" and found that he "is quite a tense and insecure youngster who has experienced an extremely difficult

childhood." (R. at 205.) On September 1, 1999, Dr. Neely noted that Jackson "continued to display anxiety symptoms–headaches, leg & arm pain, other bodily sensations." (Id. at 139.) Dr. Neely also noted in September 1999 that Jackson's "anxiety problems interfere with his ability to concentrate . . . in [a] school setting [however there are] no significant problems with other spheres." (Id. at 140.)

In April 1999, Jackson's third grade teacher, Laurie Fraser ("Ms. Fraser"), noted that Jackson "tends to fight quite often (several times a month)." (Id. at 88.) Ms. Fraser also indicated that Jackson's behavior is typical of a student his age although "he gets aggressive and has little self-control." (Id.) In September 1999, Jackson's fourth grade teacher, Brandy Bunn ("Ms. Bunn"), reported that Jackson "instigates problems," "seeks attention constantly," and "has trouble following orders from adults. He wants to be in control." (R. at 144.) A November 2000 written conference summary indicated that one of Jackson's teachers stated that he was "not a behavior problem." (Id. at 233.) However, from December 14, 1999, through November 24, 2000, Jackson was disciplined on seven different occasions with either a conference or suspension. (Id. at 228.) On May 22, 2000, Jackson's treating psychiatrist, Dr. Nieves Iglesias ("Dr. Iglesias"), noted that Jackson's "grandmother is seeking disability for which I feel is not necessary since [Jackson] is very capable of functioning within normal limits." (Id. at 237.)

On January 3, 2001, Jackson was admitted to the William S. Hall psychiatric institute ("William S. Hall") after "having acted out in school . . . . He was screaming, cursing, hitting, kicking, and spitting on his teacher and principal as well. He also attempted to spit on and bite medical personnel at the hospital." (Id. at 312.) Jackson was hospitalized at William S. Hall from January 3, 2001 through January 19, 2001. (R. at 312.) During his time at William S. Hall,

6

Jackson made "poor progress on the behavior management program" as he continued to threaten the staff. (Id. at 314.) Intervention attempts were also unsuccessful. (Id.) Jackson was diagnosed with "posttraumatic stress disorder [and] chronic and oppositional defiant disorder." (Id.) Following his release from William S. Hall, Jackson was "taught at home for the remainder of his educational instruction as a homebound student." (Pl. Br. 4.); (R. at 320, 323.)

The ALJ concluded that Jackson "struggles academically and performs below grade level, indicating marked limitation in his ability to acquire and use information." (R. at 264.) However, the ALJ did not find a marked limitation in Jackson's "ability to interact and relate with others."[2] The ALJ explained that, "[a]ccording to teachers' reports in April and August 1999, [Jackson] was able to play alone and with other children, although he fought some, and he accepted direction poorly from adults and could be rude and disrespectful . . . but in November 2000, teachers report that [Jackson] was not a behavior problem." (Id.) The court finds that the ALJ's conclusion that Jackson did not have a marked limitation in his ability to interact and relate with others in January and February 2001 is not supported by substantial evidence.

In his decision, the ALJ fails to address Jackson's hospitalization at William S. Hall and how that affected his conclusion regarding Jackson's ability to interact and relate with others. Additionally, the ALJ fails to take into consideration Jackson's diagnosis for chronic and oppositional defiant disorder in January 2001. Further, the objective medical evidence in the record establishes that Jackson "was admitted to [William S. Hall] on emergency admission from Marion County upon having acted out in school, [which was the] second such incident in a

---

[2] The ALJ also concluded that Jackson did not have marked limitations in the remaining domain areas; however, Jackson only contests the ALJ's conclusion that Jackson's ability to interact and relate with others was less than markedly impaired. See (Pl. Br. 4-5.).

month. He was angry with his teacher secondary to having recess and points taken away." (Id. at 313.) Jackson's teachers also consistently expressed concern for his belligerence, lack of self-control, and inability to follow classroom rules. (Id. at 87-88; 143-44.) In Jackson's teacher evaluation from April 1999, under social functioning, when asked "Are there difficulties with this student's behavior in the classroom (e.g., physical aggression, social isolation, avoidance of interpersonal activities)?" Ms. Fraser marked "yes" and explained that Jackson's difficult behavior occurred "daily." (Id. at 883.) When asked whether Jackson "interact[s] appropriately with adults and persons in authority," Ms. Fraser answered "no." (R. at 883.) In Ms. Bunn's evaluation, she noted that Jackson's "behavioral skills are [a] major priority" and also indicated that Jackson has difficulties on a daily basis with his behavior. Ms. Bunn also indicated that Jackson did not interact appropriately with adults.

Additionally, during his hospitalization at William S. Hall, Dr. Patrick Butterfield ("Dr. Butterfield"), Jackson's attending child psychiatrist, observed that Jackson threatened to harm himself when he did not get his way and had "poor emotional control." (Id. at 314.) Dr. Butterfield also noted that Jackson admitted "that he had trouble with peers and teachers and that he is often irritable and feels that no one listens to him." (Id. at 313.) Accordingly, based on the events that led to Jackson's hospitalization, Dr. Butterfield's observations, Jackson's apparent behavioral problems, and his diagnosis of chronic and oppositional defiant disorder, the court finds that the record lacks substantial evidence to support a decision denying SSI benefits under the correct legal standard. Furthermore, reopening the record for more evidence would serve no purpose.

Based on the foregoing, the court finds that the ALJ's conclusion that Jackson did not suffer from marked limitations in his ability to interact and relate with others in January and February 2001 is not supported by substantial evidence. Therefore, the court reverses the Commissioner's decision and remands the case to the Commissioner for an award of benefits. Further, the court adopts Magistrate Judge Rogers' Report and Recommendation.

It is therefore

**ORDERED** that the Commissioner's decision is reversed and the case is remanded for an award of SSI benefits for January and February 2001.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
March 4, 2010